UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

COLIN CHASE,

                Plaintiff,

vs.

BROTHERS INTERNATIONAL FOOD
CORPORATION,

                Defendant.

**COMPLAINT**

Civ. No.

Trial by Jury
is Demanded

---

Plaintiff Colin Chase (hereinafter "Plaintiff " or "Plaintiff Chase"), complaining by his attorneys, Underberg & Kessler LLP, Elizabeth A. Cordello, Esq., of counsel, alleges the following as his complaint against Brothers International Food Corporation (hereinafter "Defendant" or "Brothers"):

### NATURE OF THE ACTION

Plaintiff Colin Chase brings this civil action seeking declaratory relief, monetary damages and affirmative relief based upon Defendant Brothers' violation of the employee protection provisions of the Food Safety Modernization Act ("FSMA"), 21 USC § 2201 *et seq*. While an employee of Defendant Brothers, Plaintiff Chase raised and pursued safety and health concerns regarding the redating and sale of expired food products, such as Potato Crisps and Fruit Crisps like the "Disney" line of fruit crisps marketed to toddlers, and also the sale of improperly rehydrated Fuji

Apple Crisps. Plaintiff Chase was terminated in retaliation for pursuing such safety and health concerns.

## PARTIES

1. The Plaintiff, Colin Chase, is a former employee of Brothers. Plaintiff Chase was employed in the position of Director of eCommerce at Brothers' Rochester, New York headquarters from on or about July 19, 2010 until his termination on July 16, 2012. Plaintiff Chase resides at 124 Druid Hill Park, Rochester, New York 14609.

2. The Defendant, Brothers, is a privately owned food and beverage company based in Rochester, New York at 1175 Lexington Avenue with other offices in Raleigh, North Carolina, Qingdao, China and Quito, Ecuador.

## SUBJECT MATTER AND JURISDICTION

3. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) because the claim arose in this judicial district and the plaintiff resides in this judicial district and the defendant maintains a place of business within the District.

5. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Plaintiff filed a timely complaint of discrimination with the Occupational Safety and Health Administration (hereinafter "OSHA") and brings this action upon

the Secretary of Labor's failure to issue a final order within 210 days after receipt of the Complaint.

7.The Plaintiff has not commenced any other proceeding in any other forum involving the alleged unlawful employment practices which were the subject of the OSHA complaint.

## FACTS

8.Plaintiff Chase was hired by Defendant Brothers on or about July 19, 2010 as Director of eCommerce.

9.Plaintiff Chase's work performance while employed by Brothers was at all times exemplary.

10.Beginning on or about April 2012, Plaintiff Chase and Brothers Manager Cathy Parsons alerted Brothers co-CEO Travis Betters to a batch of expired potato crisps that were being sold online.

11.Mr. Betters instructed that the continued sale of the expired potato crisps should stop until an employee found time to "sticker" the potato crisps with "new expiration dates".

12.A couple of weeks later, in or about May or June 2012, Brothers began to require employees to sign agreements which included non-disclosure provisions.

13.Upon information and belief, this new condition of continued employment was motivated by the fact that some employees, particularly Plaintiff Chase, were aware of the fact that Brothers redates and sells expired food products.

14. As such, the requirement of signing a non-disclosure agreement as a term of continued employment was in and of itself retaliatory and illegal.

15. Plaintiff Chase also complained to Brothers Manager Cathy Parsons and Director of Sales Rob Larson regarding the partial rehydration of Brothers' food product Fuji Apple Fruit Crisps internally referred to at the company as the "soggy", "soft", or "bad" apple situation.

16. Plaintiff Chase inquired whether the "soggy" apple products were vulnerable to bacterial contamination, to which Ms. Parsons indicated that she did not know and that tests were needed.

17. Plaintiff Chase also reported the "soggy"/"bad" apple situation to Brothers co-CEO Travis Betters, to which he responded that the "bad" batch would continue to be sold through September 2012 and any complaining customers should receive a 50% off coupon toward a future purchase of a Brothers product.

18. Mr. Betters additionally instructed Plaintiff Chase to track the "cost" of the purportedly ameliorative coupons.

19. Plaintiff Chase also complained to Mr. Betters and Manager Bill Sharp regarding Brothers' practice of redating expired products, including products marketed to toddlers, such as Brothers' Disney Fruit Crisps.

20. Plaintiff Chase was told by Mr. Betters to tell customers that the reason for the redating was that it had originally been dated for sale in Europe.

21. It was understood by both Mr. Betters and Plaintiff Chase that this was a directive to give false information to customers since it was well known that Brothers' products were not being sold in Europe at that time.

22.     On or about July 14, 2012, Brothers co-CEO Matt Betters emailed Plaintiff Chase to inquire whether he would be in the office on July 16, 2012 to discuss the terms of the proposed non-disclosure / non-competition agreement.

23.     On or about July 15, 2012, Plaintiff Chase responded via email to Mr. Betters that he had an appointment with an attorney to review the agreement for 9:30 am on July 17, 2012 (rescheduled from July 16th), but would meet on July 16th as requested.

24.     In his July 15, 2012 email, Plaintiff Chase also reiterated his grave concerns regarding the sale of expired Disney Fruit Crisps to young children, the sale of "soggy" apple defective products and the fact that he was being requested to sign a non-disclosure agreement at the same time he was complaining about food products that he believed to be dangerous and illegal.

25.     When Plaintiff Chase arrived for the meeting with Travis and Matt Betters on July 16, 2012, both Messrs. Betters were angered by Plaintiff Chase's complaints about the safety and legality of their food products.

26.     Both Messrs. Betters demanded Plaintiff Chase "prove [his] loyalty" by signing the non-disclosure/non-competition agreement without the benefit of allowing Plaintiff Chase one additional day to review the agreement with his attorney.

27.     When Plaintiff Chase indicated he would not sign the agreement without first meeting with his attorney, he was immediately terminated and escorted off of the premises.

28.     Upon information and belief, comparable employees who had <u>not</u> complained about food safety were:

    a. Afforded more time to review proposed non-disclosure/non-competition agreement with their attorneys;

    b. Given more latitude to negotiate the terms and conditions of proposed non-disclosure/non-competition agreement;

    c. Not terminated for requesting time to review with an attorney or requesting to negotiate terms of proposed non-disclosure/non-competition agreement; and/or

    d. Given a chance to be rehired after their initial refusal to sign the proposed non-disclosure/non-competition agreement.

29.     Defendant Brothers terminated Plaintiff Chase's employment solely because he complained about the safety of their food products.

30.     Upon information and belief, Defendant Brothers will claim Plaintiff Chase's failure to sign the proposed non-disclosure/non-competition agreement was the reason for termination.

31.     However, conditioning continued employment on signing a "gag" against protected disclosure is in itself an illicit retaliatory act.

32.     Further Defendant Brothers' anticipated proffered reason for termination is a transparent pretext for retaliatory animus, as discussed in paragraph 26 a – d herein and also as indicated in the temporal proximity between the protected activity and retaliatory act.

33. After Plaintiff Chase was terminated from employment with Defendant Brothers, he communicated through his attorney to Defendant Brothers that he believed his rights under FSMA were violated and that he intended to pursue a claim regarding same.

34. Shortly thereafter, Brothers instituted a federal lawsuit (12-CV-6508G) against Plaintiff Chase claiming violations of the Computer Fraud and Abuse Act (CFAA) alleging Plaintiff Chase "stole" information and refused to provide a password.

35. One week after the lawsuit was filed, it was reported on the front page of the Rochester Business Journal.

36. Upon information and belief, this lawsuit and the media attention it inevitably received was initiated for the sole purpose of further retaliating against Plaintiff Chase because he was about to make a FSMA protected disclosure to OSHA.

37. After incurring tens of thousands of dollars in legal fees pursuing a motion to dismiss the meritless federal court action, Plaintiff Brothers withdrew its federal lawsuit prior to the Motion to Dismiss being decided and now has filed a state court action (Index No. 2013-6304) against Plaintiff Chase.

38. Upon information and belief, Defendant Brothers continues to doggedly pursue litigation against Plaintiff Chase for the sole purpose of retaliating against him for invoking his rights under FSMA and to discourage the continued pursuit of his rights under FSMA.

39. As a direct result of Brothers' retaliatory actions, Plaintiff Chase has suffered significant damages including, but not limited to, severely limiting his employment and earning prospects.

40. Indeed, an internet search of Plaintiff Chase shows the Rochester Business Journal article that essentially accuses Plaintiff Chase of being a liar and a thief.

41. Additionally, Plaintiff Chase has suffered irreparable damage to his reputation.

42. Additionally, Plaintiff Chase has already incurred, and will continue to incur significant legal fees in the pursuit of this action, in the defense of the retaliatory federal lawsuit and now in defense of the retaliatory state court lawsuit (Index No. 2013-6304).

43. Additionally, as a result of the foregoing calculated and retaliatory campaign waged against Plaintiff Chase by Defendant Brothers, Plaintiff Chase has suffered severe mental anguish and public humiliation.

## CLAIM FOR RELIEF

## VIOLATION OF FOOD SAFETY MODERNIZATION ACT

44. Plaintiff repeats and realleges as though fully set forth herein, all allegations in paragraphs 1 through 43.

45. The requirement that Plaintiff Chase sign a non-disclosure agreement for continued employment was in and of itself a retaliatory and unlawful act designed to prevent a protected disclosure.

46. The termination of Plaintiff's employment was a retaliatory act by Defendant on the basis of his protected internal complaints regarding the safety of the food sold by Brothers and Plaintiff's reasonable belief said food safety issues were in violation of laws covered by FSMA.

47. The Federal lawsuit (12-CV-6508G) and related media attention filed by Defendant against Plaintiff were also a retaliatory act against Plaintiff for having made internal protected complaints and because he was about to make a protected disclosure to OSHA.

48. The state court lawsuit (Index No. 2013-6304) and anticipated related media attention to be filed by Defendant against Plaintiff is also a retaliatory act against Plaintiff for having made internal protected complaints and because of his intent to file the instant lawsuit.

49. As a proximate cause of Defendant's retaliatory termination of Plaintiff, he has suffered and continues to suffer substantial loss of past and future earnings, deferred compensation, bonuses and other employment benefits.

50. As a further and proximate result of Defendant's subsequent retaliatory actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, damage to reputation, mental and physical anguish and other incidental and consequential damages and expenses including but not limited to attorneys' fees in defending himself against the retaliatory lawsuits and pursuing this action.

51. The conduct of the Defendant was and continues to be outrageous and done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to

equitable and injunctive relief, an award of compensatory damages, punitive damages, expenses and attorneys' fees.

## JURY DEMAND

50.  Plaintiff Chase demands a trial by jury.

WHEREFORE, as a result of the retaliatory conduct and actions of the Defendant herein alleged, Plaintiff demands:

(1) Judgment declaring that Defendant violated the aforementioned statute;

(2) Defendant, its agents, employees, officers and successors in interest, and those acting in concert with Defendant, be permanently enjoined from discriminating against, harassing or retaliating against Plaintiff on any basis forbidden by FSMA;

(3) That Plaintiff be made whole in the form of back pay and front pay and afforded all benefits which would have been afforded Plaintiff but for said retaliation;

(4) Defendant be ordered to compensate, reimburse and make the Plaintiff whole for compensatory and/or special damages in an amount to be determined;

(5) Defendant be ordered to pay Plaintiff prejudgment interest;

(6) Defendant be ordered to pay the costs and disbursements of this action and the related retaliatory actions, including attorneys' fees; and

(7) for such other and further relief as may be just and proper.

Dated:   June 6, 2013
         Rochester, New York

UNDERBERG & KESSLER LLP

Elizabeth A. Cordello, Esq.
Attorneys for Plaintiff
300 Bausch & Lomb Tower
Rochester, New York 14604
Telephone: (585) 258-2800
ecordello@underbergkessler.com